# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NALY INTHAVONGSY, | ) 1:08cv01294 BAK (DLB) |
| | ) |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## BACKGROUND

Plaintiff Naly Inthavongsy ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On January 23, 2009, the action was reassigned to the Honorable Theresa A. Goldner for all purposes. On April 6, 2009, the action was temporarily reassigned to the Honorable Dennis L. Beck due to Judge Goldner's resignation.

**FACTS AND PRIOR PROCEEDINGS[2]**

Plaintiff filed her applications on March 24, 2006, alleging disability since April 1, 2003, due to depression, headaches, back pain, nightmares, stomach aches and dizziness.  AR 109-111, 126-133, 247-253.  After being denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 66-70, 72-75, 76.  On March 25, 2008, ALJ Bert C. Hoffman held a hearing.  AR 27-53.  He denied benefits on April 25, 2008.  AR 8-19.  The Appeals Council denied review on July 7, 2008.  AR 4-6.

Hearing Testimony

ALJ Hoffman held a hearing on March 25, 2008, in Fresno, California.  Plaintiff appeared with her attorney, Melissa Proudian.  An interpreter assisted at the hearing.  AR 27.

Plaintiff testified that she was born in 1952, and that she was 23 years old when she came to the United States.  AR 31.  She finished the third grade in Laos and testified that she cannot speak, read or write English.  AR 32, 33.  She also testified that she forgot how to read and write in her own language.  AR 33.  Plaintiff was married but did not have children.  AR 31.  Her husband comes and goes from the home.  AR 32.  Plaintiff testified that she never had a California driver's license, but had one in Texas.  AR 33.  She goes places with her sister and eats with her neighbors.  AR 34.

Plaintiff testified that she last worked in 2000 at a Levi's sewing factory making pants. AR 34-35.  She stopped working when she was laid off.  On April 1, 2003, her onset date, Plaintiff explained that she "was having a headache," had low back pain and was heartbroken.  AR 36.  Her headaches were so bad that she couldn't concentrate.  These problems are now worse. She also cannot work because she "can't see," and because of nightmares and fears that someone is coming to kill her.  Without her pain medications, she "wanted to die."  The pain medications allow her to get by, but without them, she wants to kill herself and her husband.  AR 37.  She takes ibuprofen 600 mg and Laotian herbals medicines.  AR 38.  Plaintiff has not had physical

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

therapy, injections or suggestions of surgery for her back.  AR 39.  Plaintiff thought that she could sit for one hour, stand for about 50 minutes and walk for half a block.  AR 39-40.

Plaintiff testified that she rests during the day, four to five times per week, because of her depression.  AR 41-42.  When asked what causes her depression, she said her husband makes her very angry and anxious, and that she wants to kill him.  AR 42.  She becomes very depressed two or three times per day and has suicidal thoughts very often.  AR 45.  Plaintiff began taking medication and receiving treatment at Fresno County Mental Health, but stopped going after no one "took [her] there anymore."  AR 43.  Plaintiff used to have friends, but she didn't like the way they talked to her.  Now she only sees her sister.  Plaintiff has no hobbies and does not enjoy doing anything.  AR 44.

Plaintiff stated that she has informed Dr. Tu about her suicidal thoughts.  She takes five medications, but they only helped her enough "to endure."  Her concentration is sometimes good, but there are times when she gets headaches and starts hearing noises.  AR 46.  She estimated that her concentration was good three to four times per day, for about 10 to 20 minutes at a time.  AR 46-47.  Other times, she hears "calling noises" and is frustrated and angry.  AR 47.

Plaintiff's sister cooks for her, though she could prepare a little snack.  Plaintiff does not help with cleaning because her back hurts and she can't bend over.  She can do laundry, but it causes pain.  During the day, she does not watch television, but walks, sits down and lays down. AR 48-49.

Medical Record[3]

On June 25, 2006, Plaintiff saw consultive examiner Steven Stoltz, M.D.  Her chief complaint was a history of aches and pains.  She had no history of blurry vision.  Visual acuity with glasses was 20/70 in both eyes, 20/70 in the right eye and 20/100 in the left eye.  Visual acuity without glasses was 20/200 in both eyes, 20/200 in the right eye and 20/200 in the left eye. Dr. Stoltz did not note any vision deficiencies or diagnose a vision problem.  Dr. Stoltz indicated

_____

[3] Plaintiff's argument relates only to her visual impairment.  There are no issues with the ALJ's findings as to her mental health or back pain.  Thus, the Court will only summarize the medical evidence related to her vision.

that he found no objective evidence for any ongoing medical disorder that would place any limits on Plaintiff's activities.  AR 218-223

On July 10, 2006, State Agency physician R.D. Fast, M.D., completed a Physical Residual Functional Capacity Assessment form.  Dr. Fast opined that Plaintiff had no exertional, postural, or manipulative limitations.  She was limited in near and far acuity, based on her corrected vision of 20/70.  He further noted that Plaintiff needed to avoid work requiring reading fine print or other vision intense activities.  AR 226-230.

On February 22, 2007, State Agency physician I. Ocrant reviewed Plaintiff's claim.  He opined that vision limitations were not appropriate because her fundoscopic examination was normal, which suggested refractive error.  He also noted that Plaintiff did not allege a vision problem, and that Plaintiff's glasses at the time of the examination were not necessarily the best correction.  AR 231.

ALJ Findings

The ALJ found that Plaintiff's depressive disorder, not otherwise specified, was a severe impairment.  Despite this, Plaintiff could perform simple, repetitive tasks.  AR 13-14.  Given this residual functional capacity ("RFC"), the ALJ determined that Plaintiff could perform her past relevant work as an assembly worker.  AR 18.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the

1    proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This

2    Court must uphold the Commissioner's determination that the claimant is not disabled if the

3    Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

4    substantial evidence.  *See* *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

5    Cir. 1987).

6                                              **REVIEW**

7            In order to qualify for benefits, a claimant must establish that he is unable to engage in

8    substantial gainful activity due to a medically determinable physical or mental impairment which

9    has lasted or can be expected to last for a continuous period of not less than 12 months.  42

10   U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

11   such severity that he is not only unable to do her previous work, but cannot, considering his age,

12   education, and work experience, engage in any other kind of substantial gainful work which exists

13   in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The

14   burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.

15   1990).

16           In an effort to achieve uniformity of decisions, the Commissioner has promulgated

17   regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

18   C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  Applying this process in this case, the ALJ found

19   that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her

20   disability; (2) has an impairment or a combination of impairments that is considered "severe"

21   (depressive disorder, not otherwise specified) based on the requirements in the Regulations (20

22   CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which

23   meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4;

24   and (4) retains the RFC to perform her past relevant work as an assembly worker.  AR 13-18.

25           Plaintiff argues that the ALJ failed to properly evaluate the State Agency physician's

26   opinion.

27

28

                                                    5

1

**DISCUSSION**

2      Plaintiff argues that the ALJ failed to properly evaluate Dr. Fast's opinion that Plaintiff

3  was limited in her near and far visual acuity and had to avoid work requiring reading fine print or

4  other vision intense activity.  AR 228.  Plaintiff contends that had the ALJ adopted the visual

5  limitations, Plaintiff would have been found disabled.

6      Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

7  who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

8  (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

9  physicians).  As a general rule, more weight should be given to the opinion of a treating source

10 than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643,

11 647 (9th Cir.1987).  At least where the treating doctor's opinion is not contradicted by another

12 doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d

13 1391, 1396 (9th Cir.1991).  Even if the treating doctor's opinion is contradicted by another

14 doctor, the Commissioner may not reject this opinion without providing "specific and legitimate

15 reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722

16 F.2d 499, 502 (9th Cir.1983).

17     The opinion of an examining physician is, in turn, entitled to greater weight than the

18 opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990);

19 *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).  As is the case with the opinion of a treating

20 physician, the Commissioner must provide "clear and convincing" reasons for rejecting the

21 uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506.  And like the opinion

22 of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor,

23 can only be rejected for specific and legitimate reasons that are supported by substantial evidence

24 in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

25     The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence

26 that justifies the rejection of the opinion of either an examining physician or a treating physician.

27 *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.  In some cases, however, the ALJ can

28 reject the opinion of a treating or examining physician, based in part on the testimony of a

1  nonexamining medical advisor.  *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir.1989);

2  *Andrews,* 53 F.3d at 1043; *Roberts v. Shalala,* 66 F.3d 179 (9th Cir.1995).  For example, in

3  *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the

4  ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of

5  Magallanes's treating physicians...." *Magallanes,* 881 F.2d at 752 (emphasis in original).  Rather,

6  there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on

7  laboratory test results, on contrary reports from examining physicians, and on testimony from the

8  claimant that conflicted with her treating physician's opinion.  *Id.* at 751-52.

9       Here, Dr. Fast, the State Agency physician, opined that Plaintiff was limited in near and far

10  visual acuity and therefore had to avoid work requiring reading fine print or other vision intense

11  activity.  AR 228.  He further found that Plaintiff had no exertional, postural, manipulative,

12  environmental or communicative limitations.  AR 226-230.  The ALJ "concurred" with Dr. Fast

13  insofar as he determined that Plaintiff did not have any severe physical impairments.  AR 18.

14  SSR 96-6p.  The ALJ also afforded "considerable weight" to the opinion of Dr. Stoltz, the

15  consultive examiner, who determined that Plaintiff had no physical limitations based on minimal

16  objective findings.  AR 18.

17       Plaintiff argues that Dr. Fast's visual limitations were supported by Dr. Stoltz's objective

18  findings, which included visual measurements, with corrective lenses, of 20/70 in both eyes, 20/70

19  in the right eye and 20/100 in the left eye.  AR 220.  She contends that the opinions of Dr. Stoltz

20  and Dr. Fast are not contradicted and therefore should have been adopted.

21       Plaintiff misinterprets Dr. Stoltz's findings.  While he found less than perfect vision with

22  corrective lenses, he found no visual impairment and did not limit Plaintiff in any way.  A

23  diagnosis or objective finding does not necessarily translate into a limitation, and Plaintiff is

24  therefore incorrect in stating that Dr. Stoltz found a visual limitation.  *Key v. Heckler,* 754 F.2d

25  1545, 1549 (9th Cir. 1985) (the mere diagnosis of an impairment is not sufficient to sustain a

26  finding of disability).

27

28

In fact, Dr. Stoltz found that Plaintiff had no limitations *despite* her visual findings.  As an examining physician, his opinion is entitled to more weight than that of Dr. Fast, who didn't examine Plaintiff yet imposed a visual limitation.

Plaintiff also relies on a case analysis performed by State Agency physician I. Ocrant, M.D.  Dr. Ocrant opined that vision limitations were not appropriate because Plaintiff's fundoscopic examination, performed by Dr. Stoltz, was normal, which suggested refractive error. He also noted that Plaintiff did not allege a vision problem, and that Plaintiff's glasses at the time of the examination were not necessarily the best correction.  AR 231.  Plaintiff reasons that because the visual limitation was not removed, as Dr. Ocrant requested, that it is somehow entitled to more weight.  Plaintiff also faults Dr. Ocrant for stating that Plaintiff did not allege a visual problem.  The fact remains, however, that Dr. Fast's opinion was not entitled to more weight than that of Dr. Stoltz, regardless of the actions taken in connection with Dr. Orcant's request.

Plaintiff also notes that she testified at the hearing that she stopped working, in part, because she "[couldn't] see."  AR 37.  Her testimony, however, does not trump the medical records, especially where the ALJ found her less than fully credibility.  The ALJ noted in his decision that Plaintiff testified that she stopped working partly because of vision problems, though he determined from the objective evidence that Plaintiff did not have any physical impairments. AR 15.  Insofar as Plaintiff cites the State Agency interviewer's notation that Plaintiff did not read during her interview and her sister answered most questions, such statements are not probative of a visual impairment.

Finally, Plaintiff cites the State Agency's Medical/Vocational Decision Guide in which a reviewer applied the visual limitation and found that Plaintiff could not perform her past relevant work.  AR 55.  Again, however, this opinion from a non-examining, non-medical source does not make the ALJ's reliance on Dr. Stoltz incorrect.  Moreover, even though the reviewer found that Plaintiff could not perform her past relevant work, he found that Plaintiff could perform a significant number of jobs in the national economy.

1    For the above reasons, the Court finds that the ALJ's review of the medical evidence was

2 supported by substantial evidence and free of legal error.

3                                    **CONCLUSION**

4    Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

5 evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court

6 DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social

7 Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael

8 J. Astrue, Commissioner of Social Security and against Plaintiff, Naly Inthavongsy.

9    IT IS SO ORDERED.

10   **Dated:    December 4, 2009           _____/s/ Dennis L. Beck_____**
                                        UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28